Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000537
30-AUG-2019
08:50 AM

NO. CAAP-15-0000537

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
KEITH MCKINNEY, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 14-1-0315)

SUMMARY DISPOSITION ORDER
(By:  Ginoza, Chief Judge, Fujise and Leonard, JJ.)

Defendant-Appellant Keith McKinney (McKinney) appeals *pro se* from the June 17, 2015 Judgment of Conviction and Sentence entered by the Circuit Court of the First Circuit (Circuit Court).[1]  After a jury trial, the Circuit Court convicted McKinney of three counts of Sexual Assault in the Second Degree, in violation of Hawaii Revised Statutes (HRS) § 707-731[2] (Supp. 2018), and sentenced him to concurrent ten-year terms of incarceration in each count with a mandatory minimum of six (6) years and eight (8) months as a repeat offender.

On appeal, McKinney asserts:  (1) the Circuit Court erred because there was insufficient evidence to support his conviction; (2) the Deputy Public Defender (DPD) assigned as his

---

[1]     The Honorable Dexter D. Del Rosario presided.

[2]     HRS § 707-731 provides, in relevant part:  "(1) A person commits the offense of sexual assault in the second degree if:  (a) The person knowingly subjects another person to an act of sexual penetration by compulsion [.]"

trial attorney provided ineffective assistance of counsel; and (3) the State committed prosecutorial misconduct.[3]

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve McKinney's points as follows and affirm.

1. The State presented substantial evidence supporting McKinney's conviction. McKinney apparently challenges the sufficiency of the evidence in three ways, stating: (1) there was "not one iota of evidence that a sexual relationship had taken place[;]" (2) "[DPA] state [sic] to the jury that I raped the c/w, without a rape kit to confirm that prejudicial statement[;]" and (3) "I have not had sex with [CW]."

HRS § 707-731 provides, in relevant part, "(1) A person commits the offense of sexual assault in the second degree if: (a) The person knowingly subjects another person to an act of sexual penetration by compulsion[.]" McKinney's challenge to the sufficiency of evidence appears limited to the acts of sexual penetration rather that compulsion or his own mental state. HRS § 707-700 (2014) provides, in relevant part:

"Sexual penetration" means:

(1) Vaginal intercourse, anal intercourse, fellatio, deviate sexual intercourse, or any intrusion of any part of a person's body or of any object into the genital or anal opening of another person's body; it occurs upon any penetration, however slight, but emission is not required. As used in this definition, "genital opening" includes the anterior surface of the vulva or labia majora; or

(2) Cunnilingus or anilingus, whether or not actual penetration has occurred.

Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of

---

[3] McKinney's Opening Brief and Reply Brief do not conform with the requirements of the Hawai'i Rules of Appellate Procedure (HRAP) and, thus, his points may be deemed waived. HRAP Rule 1(d) (pro se appellant "deemed to be aware of, and are expected to comply with, all of the provisions of these rules.") ; HRAP Rule 28(b)(4) (point of error not presented on appeal in accordance with Rule 28 "will be disregarded, except that the appellate court, at its option, may notice a plain error not presented"). However, it is the policy of this court to address a litigant's arguments on the merits where possible. Bettencourt v. Bettencourt, 80 Hawai'i 225, 230, 909 P.2d 553, 558 (1995)). McKinney's points of error are restyled and presented to the degree discernable.

2

reasonable caution to support a conclusion. State v. Timoteo, 87 Hawai'i 108, 112-13, 952 P.2d 865, 869-70 (1997) "'[T]he testimony of a single witness, if found by the trier of fact to have been credible, will suffice' to provide substantial evidence." State v. Kalaola, 124 Hawai'i 43, 50-51, 237 P.3d 1109, 1116-17 (2010) (quoting In re Doe, 95 Hawai'i 183, 196, 20 P.3d 616, 629 (2001) (citation omitted)).

Here, the CW testified that McKinney placed his mouth on her vagina, penetrated her vagina with his finger, and placed his penis inside her vagina. CW's testimony provided substantial evidence for acts of sexual penetration sufficient to support a conviction for Sexual Assault in the Second Degree. Therefore, McKinney's claim is without merit.

2. McKinney makes numerous arguments that the DPD assigned to his case provided ineffective assistance of counsel.[4]

> When reviewing a claim of ineffective assistance of counsel, [the appellate court] looks at whether defense counsel's assistance was within the range of competence demanded of attorneys in criminal cases. The defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. To satisfy this second prong, the defendant needs to show a possible impairment, rather than a probable impairment, of a potentially meritorious defense. A defendant need not prove actual prejudice.

State v. Wakisaka, 102 Hawai'i 504, 513-14, 78 P.3d 317, 326-27 (2003) (internal quotation marks, citations, and footnote omitted).

In his first assertion as we have identified it above, McKinney fails to identify which "prejudicial photos" his trial

---

[4] Specifically, McKinney asserts: (1) DPD failed to object to prejudicial photos; (2) DPD failed to remove himself from this case; (3) DPD refused to provide Notice of Discovery to McKinney; (4) DPD made racial undertones during voir dire by referring to the CW as a Japanese woman and McKinney as a black man; (5) DPD argued consent when McKinney wanted to contest whether there had been a sexual relationship between himself and the CW; (6) DPD failed to investigate whether McKinney lived at the 2410 Koa Avenue address; (7) DPD failed to point out to the jury that the exhibit was redacted; (8) DPD failed to call McKinney's friend Marie Kashem as a witness; (9) DPD failed to investigate McKinney had filed complaints with the F.B.I. against the Office of the Prosecuting Attorney, HPD in 2012 or complaints against officers in this case and other officers in Waikīkī; (10) DPD did not tell McKinney how much time he would get; (11) DPD failed to call an expert witness or send the security video footage to NASA.

counsel should have objected to nor does he explain how they were unfairly prejudicial. See Hawaii Rules of Evidence (HRE) Rule 403 (providing for exclusion of evidence whose relevance is "substantially outweighed by the danger of unfair prejudice[.]") In any event, our review of the eight photographs admitted into evidence at trial and the foundation therefor laid by the CW and the police officer taking photographs leads us to the conclusion that none were unfairly prejudicial and would not have been excluded had McKinney's trial counsel objected to their admission.

In his second allegation, McKinney argues that his trial counsel, upon their first meeting, "refused to remove himself from this case" without providing the grounds for such a withdrawal. Consequently, he has failed to show this "refusal" constituted ineffective assistance.

Third, McKinney argues that his counsel refused to let him see "the Notice of discovery" which we construe to mean he was not given the opportunity to review all discovery obtained by his counsel. However, McKinney does not explain how this alleged error or omission impaired his defense.

In his fourth claim, McKinney argues that his counsel "kept making reference" to him being a black man and that the CW was Japanese. This allegation is not supported by our review of the trial proceedings where counsel spent some time in voir dire exploring the potential jurors' possible racial prejudices and once in opening and closing arguments mentioning that McKinney was a black man. Rather than failing to deal with a potential issue, it was a matter of trial strategy for McKinney's counsel to examine the subject in voir dire and attempt to discover and minimize the issue before trial began. "[M]atters presumably within the judgment of counsel, like trial strategy, will rarely be second-guessed by judicial hindsight." State v. Richie, 88 Hawai'i 19, 39-40, 960 P.2d 1227, 1247-48 (1998) (citation and internal quotation marks omitted).

Fifth, McKinney argues that his counsel relied on a consent defense when he wanted to contest having sex with the CW at all. McKinney alleges that he told his counsel of his wishes

4

but that counsel proceeded with the consent defense at trial without consulting him. On this basis, McKinney makes a colorable claim as McKinney is entitled within the bounds of the law, to decide which defenses to raise.

Sixth, McKinney faults his counsel for not investigating his true address; that the jury was mislead when it was told that he lived at 2410 Koa Avenue and had two addresses. McKinney does not allege that he informed his counsel that he did not live at this address. Moreover, our review of the record does not support the notion that this information was incorrect. In waiving his rights and agreeing to be interviewed, McKinney signed a form providing 2410 Koa Avenue as his address. In his initial interview with police, McKinney was asked for his address and replied, "I actually have two but where I'm living at 2412 Koa Avenue." Even if his address was not 2410 Koa Avenue, it was close by. Thus, McKinney fails to show how the failure to investigate his address was an error or omission by counsel.

In McKinney's seventh claim, he argues his counsel should have pointed out that certain information was redacted from an exhibit. However, as this exhibit was not admitted into evidence, McKinney fails to show how this omission impaired a defense.

McKinney points out that his counsel failed to call a witness in his eighth claim. However, as he does not allege that he informed his counsel of this witness and does not explain how this witness's testimony would have helped his case, this claim also fails to establish his counsel was ineffective.

In his ninth claim, McKinney again fails to allege that he made his counsel aware of his various complaints against the prosecutors' office and police officers involved and not involved in this case, or how investigating these complaints would have helped his defense.

In similar fashion, McKinney does not explain, in his tenth allegation, how his counsel "lied" about the potential sentence he faced for these charges, nor how this impacted his defense.

Finally, McKinney alleges that his counsel did not call an expert witness or send the "video to NASA." Again, McKinney does not provide any reasons for doing so, or how he believed this would help his defense.

We conclude that, except for his claim that counsel did not consult and gain his agreement to assert the consent defense, McKinney has failed to establish an error or omission that possibly impaired a potentially meritorious defense.

3.    McKinney's allegations of prosecutorial misconduct are unfounded. McKinney alleges numerous instances of prosecutorial misconduct. McKinney does not identify in the record where the alleged incidents of prosecutorial misconduct took place, but his challenges can be grouped into four areas: (a) sufficiency of evidence for the State to make in-court statements; (b) evidence tampering; (c) racially motivated misuse of a peremptory challenge; and (d) that the State permitted CW to turn her back to McKinney.

a.    The statements by the DPA have a foundation in the evidence. McKinney challenges the evidentiary basis for statements made by the DPA during trial, specifically that the DPA claimed McKinney:  lived at 2410 Koa Avenue, forcibly kissed the CW, and raped CW absent a rape kit. The alleged statements took place during both opening statement, and closing and rebuttal arguments. The opening statement provides an opportunity for counsel to advise and outline for the jury the facts and questions in the matter before them, and the State should only refer in the opening statement to evidence that it has "a genuine good-faith belief" will be produced at trial. State v. Valdivia, 95 Hawai'i 465, 480, 24 P.3d 661, 676 (2001) (citations and internal quotation marks omitted). During closing argument a prosecutor "is permitted to draw reasonable inferences from the evidence and wide latitude is allowed in discussing the evidence[,]" and presenting his or her reasonable impressions from the evidence. State v. Clark, 83 Hawai'i 289, 304-05, 926 P.2d 194, 209-10 (1996).

The first issue is whether there was a basis in the evidence that McKinney lived at the 2410 Koa Ave address. During

closing, the DPA argued, "And what's important, remember Detective Phromsiri testified, the defendant lived a 14-minute walk away. He lived in the neighborhood. You don't go to a dumpster room to have consensual sex on the floor next to a dumpster when you live just a short walk away." During trial, Detective Pinyo Phromsiri testified that McKinney lived at 2410 Koa Avenue and that he had walked the distance from CW's apartment building to that address and it took fourteen minutes. On cross, McKinney asked whether Detective Phromsiri determined if McKinney had two addresses, the detective replied, "I just went off of the one that was on his booking, sir." Thus, the challenged statement was well within the DPA's wide latitude in discussing the evidence. Clark, 83 Hawai'i at 304-05, 926 P.2d at 209-10. Therefore, McKinney's claim is without merit.

The second issue is whether there was a basis in the evidence for the DPA to state that McKinney forcibly kissed the CW. During opening, the DPA stated, "This defendant led her over to a bench outside of the apartment, was kissing her, had his hands on her. And again she said, I want to go upstairs." And in closing, the DPA argued, "[McKinney] instructed her to face him when he kissed her." In testimony, the State elicited from the CW that McKinney kissed her although she did not want him to. In both statements, the DPA accurately reflected what was presented at trial. Therefore, McKinney's argument is without merit.

The third issue is whether there was a basis in the evidence for the DPA to state that McKinney raped the CW absent a rape kit. During opening, the DPA stated, "This defendant took [CW], a 19-year-old Japanese girl, to this, dumpster room at 4:30 in the morning. He put her down on that floor and he raped her." In closing, the DPA argued: "And he knew once he got her alone in that disgusting dumpster room, he knew what he was doing when he raped Maria on the floor." And in rebuttal, the DPA asserted, "You know he took her into that room, took off his sweatshirt, pushed her down onto the floor, and raped her three different ways."

The word "rape" is not defined in the HRS, but it is commonly defined as "unlawful sexual activity and [usually] sexual intercourse carried out forcibly or under threat of injury against the will of [usually] a female[.]" Merriam-Webster's Collegiate Dictionary 1030 (11th ed. 2003). The CW testified that McKinney placed his mouth on her vagina, penetrated her vagina with his finger, and placed his penis inside her vagina without permission, thus meeting the common definition of rape. A rape kit is not required to prove a sexual assault. The question is whether there is substantial evidence, and a single witness if believed may provide substantial evidence. Kalaola, 124 Hawai'i at 50-51, 237 P.3d at 1116-17.

Here, the DPA accurately outlined the evidence that would be presented at trial. Valdivia, 95 Hawai'i at 480, 24 P.3d at 676. Furthermore, the DPA's arguments were within the wide latitude permitted in discussing the evidence. Clark, 83 Hawai'i at 304-05, 926 P.2d at 209-10. Thus, McKinney's claims are without merit.

b. McKinney provides no evidence to support his claims of evidence or transcript tampering. McKinney asserts the State tampered with both evidence and court transcripts.

i. Evidence Tampering

McKinney claims the State altered "States [sic] Exhibit F" the screenshot of the Facebook messages to remove or alter the dates and times of the messages. McKinney argues that if the jury had been shown the dates of the messages they would have known that CW only reported the assault after McKinney messaged, "You are super ugly have a nice life[.]" As an initial matter, the Facebook message screenshot was McKinney's Exhibit F and McKinney offers no proof that the exhibit was modified by the State. Moreover, the exhibit was not entered into evidence and instead was merely offered for identification to Detective Phromsiri, who claimed to have created the screenshot. The content of the messages was presented to the jury in the form of leading questions during McKinney's cross-examination of the CW without any dates or times. Thus, because the exhibit was not introduced, it could not have affected the jury. Therefore,

there could not have been prosecutorial misconduct from modification to the Facebook messages. Thus, McKinney's point is without merit.

ii. Trial Transcript Tampering

McKinney merely makes the bald assertion that "The court transcripts have been tampered with mutilation of evidence, I will only talk to the F.B.I. or U.S. Attorneys Office." Trial transcripts are generally considered "sources whose accuracy cannot reasonably be questioned[.]" See State v. Metcalfe, 129 Hawai'i 206, 223, 297 P.3d 1062, 1079 (2013) (citing HRE Rule 201(b); Ditto v. McCurdy, 98 Hawai'i 123, 130, 44 P.3d 274, 281 (2002)). McKinney provides no evidence to support this claim and does not cite to what he believes has been altered in the transcripts. Where an appellant makes no discernible argument in support of a position we may disregard the contention. HRAP Rule 28(b)(7); State v. Cantiberos, 118 Hawai'i 424, 192 P.3d 613, No. 28800, 2008 WL 4358763 at *1 (App. Sept. 25, 2008). Thus, we disregard McKinney's contention the trial transcripts have been tampered with because he makes no discernible argument in support of the position.

c. The State did not commit prosecutorial misconduct by misusing a peremptory challenge with a discriminatory purpose. McKinney asserts the DPA committed prosecutorial misconduct for using a peremptory challenge with a discriminatory purpose against the only African-American juror. In State v. Batson, the Hawai'i supreme court adopted the rule

> that whenever the prosecution so exercises its peremptory challenges as to exclude entirely from the jury all persons who are of the same ethnical minority as the defendant, and that exclusion is challenged by the defense, there will be an inference that the exclusion was racially motivated, and the prosecutor must, to the satisfaction of the court, explain his or her challenges on a non-ethnical basis.

71 Haw. 300, 302, 788 P.2d 841, 842 (1990) (citing Batson v. Kentucky, 476 U.S. 79 (1986)).

In applying this rule, trial courts follow a three-step procedure: (1) defendant must make out a prima facie case of relevant facts that gives rise to an inference of discriminatory purpose; (2) the "burden shifts to the State to explain the exclusion by offering permissible category-neutral

justifications for the strikes; and (3) "if a category-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful discrimination." State v. Daniels, 109 Hawai'i 1, 5-6, 122 P.3d 796, 800-01 (2005). The opponent of the peremptory challenge has the burden of persuasion regarding the racial motivation for the challenge. Purkett v. Elem, 514 U.S. 765, 768 (1995); Daniels, 109 Hawai'i at 6, 122 P.3d at 801.

The first issue is whether McKinney made out a prima facie case of relevant facts that give rise to an inference of discriminatory purpose. Id. In a bench conference, the DPD stated, "At this time I'm going to make a Batson challenge, your honor, and ask the State to give a reason why [juror] is being excused." Thus, McKinney raised, although arguably did not make out a prima facie case of relevant facts giving rise to an inference of a discriminatory purpose. Second, the State's explanation of the exclusion, i.e., by offering permissible category-neutral justifications for the strikes was as follows:

> Yes, your honor. State's basis for excusing him is not based on race. It's based on his response, well, based on two things. One, his response to my question about his experience with the police when his car was stolen indicated to me that he has a bias against law enforcement and against government. Also, at the beginning of the day he was having a hard time keeping his eyes open while you were reading some of the instructions. And based on his response to my question about his work shifts, I'm concerned with his ability to remain attentive throughout the course of the trial. So for those two reasons State's seeking to excuse him.

During voir dire, the DPA engaged the prospective juror in the following exchange:

> [DPA]: Let's see. [juror]?
>
> [juror]: Um-hum.
>
> [DPA]: You said that you had your car stolen a couple weeks ago?
>
> [juror]: Um-hum.
>
> [DPA]: Oh, I'm sorry that happened. That's very recent.
>
> [juror]: Yes.
>
> [DPA]: Did you have any experiences with the police during that?
>
> [juror]: Yes, I did.

[DPA]: You did.  And how was that experience?

[juror]: Not too good really.  They came to my house, took me to the car which was located in Salt Lake.  It was sitting on bricks. It was basically totalled.  And so far I haven't heard nothing from the police I'd say.

[DPA]: Okay. I'm sorry about that.  So you haven't had a great -- not the kind of response that you were hoping for?

[juror]: Right.

[DPA]: And can I ask you one more unrelated question, but I also saw that you're a security guard, that was on your juror card.  Is that right?

[juror]: Yes.

[DPA]: Can you tell me what kind of shifts you work or what kind of hours you work?

[juror]: I work right now from 4:00 to 12:00 but we change every three months.

[DPA]: Oh, okay.  So right now you're on like a 4:00 p.m. to 12:00 a.m., to midnight shift?

[juror]: Right, right.

[DPA]: All right.  Thank you, sir.

Thus, the DPA offered permissible category-neutral justifications for the strikes.  Third, if a category-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful discrimination.  Daniels, 109 Hawai'i at 6, 122 P.3d at 801.  McKinney responded in the following exchange:

[DPD]: And just with regard to the crime that he was convicted of, it sounded to me, excuse me, it sounded more like he was -- he was upset about the condition of his vehicle.  He did not complain about the police.  What he referred to specifically was that his vehicle was basically totalled and that's what he was upset about.  With regard to his being able to pay attention, I think we can all see for ourselves he is awake and alert, your honor.

THE COURT: Okay.  Are you challenging [DPA]'s credibility and belief that he's excusing the juror because of his race?

[DPD]: At this time, yes.

THE COURT: The challenge is overruled.

Here, the trial court decided the State's category-neutral explanation was sufficient to defeat McKinney's challenge.  The record supports the Circuit Court's rejection of McKinney's argument.  Thus, McKinney's point is without merit.

11

d. McKinney also asserts prosecutorial misconduct because, he argues, the DPA allowed the CW and her interpreter to turn their backs on McKinney during bench conferences. McKinney asserts "The state knew what they were doing that was very prejudicial." McKinney provides no evidence to support this claim and does not state how he was prejudiced. Where an appellant makes no discernible argument in support of a position we may disregard the contention. HRAP Rule 28(b)(7); <u>Cantiberos</u>, 2008 WL 4358763 at *1. Thus, McKinney's point is disregarded.

Thus, having reviewed all of McKinney's allegations of prosecutorial misconduct and finding none of them to represent improper conduct, we need not conduct the harmless error analysis. <u>State v. Mara</u>, 98 Hawai'i 1, 16, 41 P.3d 157, 172 (2002). Further, because none of the challenged conduct was misconduct it cannot be so egregious as to bar reprosecution. See <u>State v. Rogan</u>, 91 Hawai'i 405, 423, 984 P.2d 1231, 1249 (1999). We therefore conclude that McKinney has failed to establish the prosecution engaged in misconduct.

Based on the foregoing, the June 17, 2015 Judgment of Conviction and Sentence entered by the Circuit Court of the First Circuit is affirmed without prejudice to McKinney bringing a petition under Rule 40 of the Hawai'i Rules of Penal Procedure regarding his choice of defenses.

DATED: Honolulu, Hawai'i, August 30, 2019.

On the briefs:

Keith McKinney,
Defendant-Appellant, pro se.

Sonja P. McCullen,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

12